UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Great American Insurance Company, | ) Civil Action # 4:06-cv-01971-RBH |
| ) | |
| ) | **O R D E R** |
| Plaintiff, ) | |
| ) | |
| Wayne C. Mills and Wayne C. Mills Farm, Inc. ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Great American Insurance Company initiated this action on July 7, 2006, for declaratory and other relief relating to certain federally reinsured Multiple Peril Crop Insurance policies. The defendants filed an Answer and Counterclaim on August 7, 2006, alleging as counterclaims negligence, bad faith refusal to pay insurance benefits, breach of fiduciary duty, unjust enrichment, fraud, breach of contract, conversion, and unfair trade practices.

Plaintiff filed a Motion for Summary Judgment with supporting memorandum and other documentation on July 17, 2007. The defendants filed a response to the motion on August 20, 2007. Plaintiff filed a Reply on August 30, 2007. A hearing was held on the motion before the undersigned on March 20, 2008.

## Background and Undisputed Facts

Based on a review of the record and the arguments of counsel, the court will first set forth the undisputed facts.

1. Defendant Wayne C. Mills ("Mills") is a South Carolina farmer who has purchased crop insurance since 1988. Defendant Wayne C. Mills Farm, Inc. is a South Carolina corporation whose sole shareholder is Wayne C. Mills.

2. Great American Insurance Company ("Great American") is an insurance company which

1

is authorized to issue federally-reinsured crop insurance, subject to the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. Section 1501, *et. seq*.  Great American is a party to a Standard Reinsurance Agreement ("SRA") with the United States Department of Agriculture ("USDA") Federal Crop Insurance Corporation ("FCIC").  The Risk Management Agency ("RMA") is an agency of the United States Department of Agriculture which administers the FCIC.

3.  Mills applied individually for crop insurance with the plaintiff, Great American Insurance Company, in 1995.  He applied for Multi-Peril Crop Insurance ("MPCI") for his crops located in Chesterfield and Marlboro Counties, in South Carolina.  Great American accepted the applications and issued Mills coverage in Chesterfield County under policy number 1995-030-855918 and Marlboro County under policy number 199-030-855913.  The policies renewed annually until cancelled or transferred to another carrier.  *(See* Affidavit of Terry Young ¶7 and Affidavit Exhibits A and B.) Neither party cancelled the coverage, and it was not transferred to another carrier during the pertinent time frame.

4.  Between 1995 and 2005, Mills obtained MPCI with Great American through Mr. Frankie Gardner with Lydia Insurance Agency.[1]  Gardner was an authorized agent for Great American.

5.  On February 25, 2002, Mills incorporated his business on the advice of his accountant.  He was the 100% shareholder for the company and the name of the entity was Wayne C. Mills Farm, Inc.

6.  As of sometime in 2002, Wayne C. Mills Farm, Inc. owned the crops insured by the MPCI policies.

7.  From 2002 to 2005, Wayne C. Mills Farm, Inc. made all premium payments on the policies in question.

---

[1] Mills testified in his deposition that he had purchased crop insurance from Great American since 1988.

8.   The named insured on the policies was not changed from Mills individually to the corporation at the time the corporation acquired ownership of the crops. However, Mills did notify the USDA Farm Service Agency ("FSA") that Wayne C. Mills Farm, Inc. was the owner of the crops starting in crop year 2002.

9.  In 2003, Jerry Mills (brother of Wayne Mills and holder of durable power of attorney for him individually) submitted an application for crop insurance on Mills' behalf individually, requesting that additional coverages be added.

10.  Mills individually submitted 2004 Acreage Reporting Forms for Chesterfield and Marlboro Counties to Great American on which he reported that he had a 100% share in the crops.

11. In 2004, Mills individually claimed losses on the corn crops in Chesterfield and Marlboro Counties and received two indemnities from Great American. Mills received $14,448 under Policy No. 855913 and $16,199 under Policy No. 855918.

12. In 2005, Mills submitted 2005 Acreage Reporting Forms to Great American on which he again reported that he individually had a 100% share in the crops.

13.  In 2005, Mills claimed losses individually on the Marlboro County soybean crop. Great American sent Mills a check, on which it subsequently stopped payment, in the amount of $21,596.

14.   In June 2005, MPCI policy change forms were submitted to the company and Great American changed the named insured entity from Wayne C. Mills to Wayne Mills Farm, Inc.

15.   The federal crop insurance program requires that "if any of the information regarding persons with a substantial beneficial interest changes during the crop year, you must revise your application by the next sales closing date applicable under your policy to reflect the correct information." *See* Affidavit of Terry Young and attached MPCI Common Crop Insurance Policy Terms and Conditions, ¶ 2(b) (Docket Entry # 59-6). For corn and soybean crops in the 2005 crop year, the

3

sales closing date was February 28, 2005. *See* Special Provisions of Insurance 2005 (Docket Entry # 59-6). The policy defines "sales closing date" as "a date contained in the Special Provisions by which an application must be filed. The last date by which you may change your crop insurance coverage for a crop year." ¶ 1.

16. When it received the policy change forms advising that the corporation Wayne C. Mills Farm, Inc. was the true owner of the crops, Great American stopped payment on the 2005 indemnity payment check and refunded to Mills individually premiums paid under the 2005 policies in the amount of $877 and $817, respectively. This was because the deadline for the application change was February 28, 2005, and Mills individually, who was the named insured, did not own the crops.

17. Great American kept $2781 of the 2004 premium payment that was paid by the corporation and applied it to reduce the 2004 alleged improperly paid indemnities of $14,448 and $16,199 which were paid to Mills individually, but allegedly should not have been paid since Mills' corporation was the owner of the crops, and since the Mills corporation was not listed as the named insured on the policy.

## Motion for Summary Judgment by Great American

Plaintiff has moved for summary judgment on several grounds. It first requests a declaratory judgment that defendant Mills was the only named insured and that he did not have an insurable interest in the crops which he purported to insure under the 2004 and 2005 policies. As a result, the company contends that Great American is entitled to reimbursement from Mills for the 2004 indemnities in the total amount of $30,647 and interest at the rate of 1.25% simple interest per calendar month. Great American also requests a declaratory judgment that Mills intentionally concealed or misrepresented the material facts relating to his ownership of the crops and that he must pay Great American 20 % of the premiums due under the 2004 and 2005 policies. In the alternative, Plaintiff requests a declaratory

4

judgment based upon unjust enrichment that Mills must reimburse Great American for the 2004 indemnities paid in addition to interest. Finally, it asserts that summary judgment should be granted in its favor on each of the defendant's counterclaims.

Defendants contend that the carrier's claims are barred by equitable estoppel, waiver and/or laches and that the motion for summary judgment should be denied on the counterclaims. However, Defendants do not make any arguments relating to the fraud counterclaim; thus, the Court finds that the motion for summary judgment on the counterclaim for fraud should be granted. The parties' arguments regarding the other counterclaims will be discussed hereinbelow.

### Summary Judgment Standard

Plaintiff filed its motion for summary judgment pursuant to Rule 56, Fed. R. Civ.P. The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56,Fed.R.Civ.P; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. *Celotex*, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation,

5

or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied upon must meet "the substantive evidentiary standard of proof that would apply at trial on the merits." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

### Relevant Policy Provisions and Regulations

The Multiple Peril Crop Insurance policies provide in the introduction thereto:

This insurance policy is reinsured by the Federal Crop Insurance Corporation (FCIC) under the provisions of the Federal Crop Insurance Act, as amended (7 U.S.C. 1501 *et seq.*) (Act). All provisions of the policy and rights and responsibilities of the parties are specifically subject to the Act. The provisions of the policy are published in the <u>Federal Register</u> and codified in chapter IV of title 7 of the Code of Federal Regulations (CFR) under the Federal Register Act (44 U.S.C. 1501 *et seq.*) And may not be waived or varied in any way by the crop insurance agent or any other agent or employee of FCIC or the company. In the event we cannot pay your loss, your claim will be settled in accordance with the provisions of this policy and paid by FCIC..

The 2004 and 2005 Basic Provisions of the policy, ¶ 1, define "insured" as follows:

The named person as shown on the application accepted by us. This term does not extend to any other person having a share or interest in the crop (for example, a partnership, landlord, or any other person) unless specifically indicated on the accepted application.

Paragraph 10, "Share Insured," of the Basic Provisions provides: "(a) Insurance will attach only to the share of the person completing the application and will not extend to any other person having a share in the crop unless the application clearly states that: (1) The insurance is requested for an entity such as a partnership or a joint venture. . ." Section 14, "Duties in the Event of Loss", provides in the section entitled "Our Duties" that "we recognize and apply the loss adjustment procedures established or approved by the Federal Crop Insurance Corporation."

Paragraph 26(a), "Payment and Interest Limitations," provides: "Under no circumstances will we be liable for the payment of damages (compensatory, punitive, or other), attorney's fees, or other

charges in connection with any claim for indemnity, whether we approve or disapprove such claim."

Paragraph 27 relates to "Concealment, Misrepresentation, or Fraud." It provides:

(a) If you have falsely or fraudulently concealed the fact that you are ineligible to receive benefits under the Act or if you or anyone assisting you has intentionally concealed or misrepresented any material fact relating to this policy:
      (1) This policy will be voided . . .
(b) Even though the policy is void, you may still be required to pay 20 percent of the premium due under the policy to offset costs incurred by us in the service of this policy.  If previously paid, the balance of the premium will be returned.
(c) Voidance of this policy will result in you having to reimburse all indemnities paid for the crop year in which the voidance was effective.

Paragraph 28 provides, regarding transfer of coverage and right to indemnity:

If you transfer any part of your share during the crop year, you may transfer your coverage rights, if the transferee is eligible for crop insurance.  We will not be liable for any more than the liability determined in accordance with your policy that existed before the transfer occurred.  **The transfer of coverage rights must be on our form and will not be effective until approved by us in writing.** Both you and the transferee are jointly and severally liable for the payment of the premium and administrative fees.  The transferee has all rights and responsibilities under this policy consistent with the transferee's interest. (Emphasis added).

The Loss Adjustment Manuals ("LAM")[2] for crop years 2004 and 2005 require in ¶14 "Entities" that, when an application is submitted, Great American "from information obtained from the insured, FSA or other reliable sources, and from the criteria for each entity type found below; verify that the person qualifies for the entity shown on the application or qualifies for a separate entity from another household member, relative, corporation, etc., and that the entity on the application has a *bona fide* interest in the crop.  Incorrect entities, in most cases, will result in an invalid policy (e.g., separate policies written for a husband and wife who do not qualify as two separate individual entities, but rather as a corporation or a joint entity . . .)  The LAMs further provide:

---

    [2] The Loss Adjustment Manuals are issued by the USDA Risk Management Agency and must be utilized by insurance carriers who issue crop insurance policies. *See* MPCI Basic Provisions, ¶ 14.

**NOTE:** Insurance providers do not have to verify entities through the FSA; however, they are encouraged to do so since insurance providers must ensure that producer-certified information is accurate and that liability is established and indemnities are paid according to policy provisions. . .

(4) If the entity type reported is questionable, document the facts and refer the case to the next line of supervision or to whom the insurance provider has instructed. If an entity is verified at FSA and there is a discrepancy between the entity recorded for crop insurance and the local FSA office, insurance providers will try to resolve the discrepancy with the FSA. If the discrepancy cannot be resolved and the insurance provider has evidence supporting its position, the insurance provider should retain the entity type reported to them; and keep on file all documentation and evidence supporting this decision.

(5) If it is determined the entity shown on the application has no insurable share in the crop, the policy must be voided; e.g., the insured's application shows "individual" but all FSA documents, marketing records, etc., show the entity that has the *bona fide* share in the crop is a Corporation. Even if the individual is a member of the Corporation, the insured as an "individual entity" does not have the *bona fide* share in this crop policy.

The Loss Adjustment Manual implements the requirements of the Code of Federal Regulations, which provides in 7 C.F.R. § 457.8(a) as follows:

Application for insurance on a form prescribed by the Corporation, or approved by the Corporation, must be made by any person who wishes to participate in the program, to cover such person's share in the insured crop as landlord, owner-operator, crop ownership interest, or tenant. No other person's interest in the crop may be insured under an application unless that person's interest is clearly shown on the application and unless that other person's interest is insured in accordance with the procedures of the Corporation. **The application must be submitted to the Corporation or the reinsured company through the crop insurance agent and must be submitted on or before the applicable sales closing date on file.** (Emphasis added).

## Plaintiff's Declaratory Judgment Action

The 2004 and 2005 MPCI policies issued to Wayne C. Mills are not typical insurance policies; rather, crop insurance is a federal benefit program that Congress created in the form of insurance partially funded by the federal treasury. The Federal Crop Insurance Corporation ("FCIC") reinsured Mills' 2004 and 2005 MPCI policies, and federal law defines and governs the policy terms and any claims. "Although crop insurance under the MPCI Policy is provided by private insurers, it is reinsured

8

by a governmental entity called the Federal Crop Insurance Corporation (the "FCIC"), pursuant to the Federal Crop Insurance Act, 7 U.S.C. §§ 1501 *et seq*. The FCIC is a wholly owned government corporation that operates under the umbrella of the Department of Agriculture (the "USDA"), and it is statutorily responsible for regulating the crop insurance industry." *In Re: Peanut Crop Insurance Litigation*, No. MDL 1634, 07-1145, 07-1146, 2008 WL 1971025 at *2 (4th Cir., May 8, 2008). *See also, Clarke v. Federal Crop Insurance Corporation*, 2 F.3d 1149, nt. 2 (4th Cir. 1993)(unpublished)("Under the FCIC's reinsurance program, a farmer can apply for crop insurance with a participating private insurance agency and the FCIC will reinsure the agency's policy."). The Risk Management Agency ("RMA"), an agency of the United States Department of Agriculture, administers FCIC. Under their rulemaking authority, RMA and FCIC have promulgated rules and regulations setting the terms and conditions of the crop insurance contracts that reinsured private companies, such as Great American, issue to farmers. The policies and related regulations found in 7 CFR Parts 400 and 457 set certain prerequisite conditions to coverage, set burdens that must be met by the insured to establish and maintain coverage, and require strict compliance with the policy terms as a prerequisite to legal action.

MPCI policies provide coverage only for the insured's share in a crop. As indicated above, MPCI Basic Provisions, ¶10(a) provides, "Insurance will attach only to the share of the person completing the application and will not extend to any other person having a share in the crop unless the application clearly states that…[t]he insurance is requested for an entity. . . " "Share" is the insured's percentage of interest in the crop at the time insurance attaches. The policyholder is responsible for proving which if any of the acres and crops he farms are insurable for the given crop year.

The undisputed material facts show that Defendants have not complied with all terms and conditions of his MPCI policy contracts and that Great American did not owe an indemnity to either

defendant.  Federal law mandates that "[n]o indemnity shall be paid unless the insured complies with all terms and conditions of the contract[.]" An insured must have an insurable interest in the crop in order for insurance to attach. Under the policy, an insured is the "named person" as shown on the application that Great American accepts and the term does not extend to any other person or entity having an interest in the crop. Crop insurance only attaches to the share that the person completing the application has in the crop. The policy defines share as the insured's "percentage of interest in the insured crop as an owner, operator, or tenant at the time insurance attaches." Here, Wayne C. Mills applied for crop insurance individually but did not timely notify the insurance company that a corporation owned the crops as required by the policy.  Therefore, the policies became void and do not provide coverage for the crop years 2004 and 2005.

Defendants assert that Great American's claims are barred by the doctrines of equitable estoppel, waiver, and/or laches, since Great American accepted checks in the name of the company for premium payments and thus had knowledge of the incorporation; its agent, Mr. Gardner, allegedly admitted that the company had notice of the incorporation; and three years passed between the submission of the claims for the 2004 crop year and the request for reimbursement, allegedly resulting in prejudice to the defendants.

> The essential elements of equitable estoppel are (1) ignorance of the party invoking it of the truth as to the facts in question; (2) representations or conduct of the party estopped which mislead; (3) reliance upon such representations or conduct; and (4) prejudicial change of position as the result of such reliance. . . The presence of these elements is not essential to the establishment of implied waiver, which results merely from conduct of the party against whom the doctrine is invoked from which voluntary relinquishment of his known right is reasonably inferable.  But the two doctrines are related, and have this in common: that the applicability of each in a  particular situation results from conduct of the party against whom it is invoked which has rendered it inequitable that he assert a right to which, in the absence of such conduct, he would be entitled.

*Pitts v. New York Life Ins. Co*., 247 S.C. 545, 148 S.E.2d 369, 371 (1966).

"Laches is neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done . . .  Importantly, delay in the assertion of a right does not, in and of itself, constitute laches; rather, '[s]o long as there is no knowledge of the wrong committed and no refusal to embrace opportunity to ascertain facts, there can be no laches." *Mid-State Trust, II v. Wright*, 323 S.C. 303, 474 S.E.2d 421, 423 (1996).

A policyholder is bound by the regulations and policy terms promulgated under the Federal Crop Insurance Act, which are binding irrespective of the farmer's knowledge. Plaintiff's policy terms are federal law. No person or entity has the power to waive or expand the terms of a federally reinsured crop insurance policy; nor can anyone extend the coverage beyond what Congress and FCIC have authorized. "An agent of the FCIC could not extend crop insurance where there was none because the doctrine of estoppel cannot extend the coverage beyond that authorized by Congress and the rules promulgated by the FCIC. *Federal Crop Insurance Corporation v. Merrill*, 332 U.S. 380, 384-395, 68 S.Ct. 1, 92 L.Ed 10 (1947); *Clarke*, 2 F.3d at*2 ("We share the district court's concern for the proper and fair adjudication of 'claims by little guys against the big Government'. . ., especially in light of the muddled determinations that Clarke received from the FCIC.  Nevertheless, as the Supreme Court has stated '[m]en must turn square corners when they deal with the Government,' and 'not even the temptations of a hard case can elude the clear meaning' of the FCIC's memorandum."); *In re Peanut Crop Insurance Litigation*, 2008 WL 1971025 at * 12 ("Although we have great sympathy for the hard-working peanut farmers of this country, our obligation is to rule on the basis of the factual underpinnings and the applicable legal principles.  The MPCI Policy and the USDA's announcements neither expressly nor impliedly promised to indemnify the Farmers at the 31 cent quota rate. . .  The MPCI Policy thus did not . . . create a contractual obligation on the part of either the Government or the insurers to indemnify the Farmers for their 2002 peanut crop losses at the 31 cent quota rate.")

11

In the case at bar, defendant Wayne Mills submitted applications to Great American for insurance in his individual name and social security number for crops in which he had no insurable share. Because Defendant Mills had no insurable share in the crop he purported to insure, no insurance attached to those crops under his policy and he is not entitled to an insurance indemnity on them under his policy terms and federal crop insurance program rules. *See Felder v. Federal Crop Ins.Corp.*, 146 F.2d 638, 640-641 (4th Cir. 1944) ("We might point out that this case involves no element of technical estoppel. No act of any official prevented the timely filing of proofs of loss; but, on the contrary, the period for filing such proofs had already elapsed before even the commission of any of these acts.") *See also*, *Mann v. Federal Crop Insurance Corp.*, 710 F.2d 144, 147 (4th Cir. 1983) ("The FCIC valued the crop according to the explicit language of the regulations and policy and the valuation was not contrary to past practices and policies of the agency. The farmer is charged with knowledge of the regulation and the policy; the doctrine of estoppel cannot be used to expand the coverage.")

In the case at bar, there is no showing that Plaintiff prevented the timely filing of the change form showing the change in the legal entity which owned the crops. In addition, the company cannot be held to have been provided with notice of the change in the entity which owned the crops merely by the payment of the premium on a company check but without utilizing the required change form. In addition, the plaintiff's delay in requesting reimbursement was caused by the failure of Mills to properly notify the company that the name of the insured needed to be changed. Therefore, the doctrines of waiver, estoppel, and laches do not apply and Great American is entitled to summary judgment on its coverage claim. However, Plaintiff is not entitled to retain 20% of the premium on the basis of intentional misrepresentation by the defendants. This right to the 20% arises from paragraph 27 of the policies, which by its own language refers to intentional misrepresentation or concealment, not mere accident or innocent mistake. As admitted by plaintiff's counsel at the hearing, there is no

12

evidence of intentional misrepresentation regarding the corporate entity.

### Defendants' Counterclaims

Great American contends that defendants' state law claims are preempted pursuant to the Crop Insurance Act, 7 U.S.C. § 1506(d), and the regulations governing private insurance companies who issue federally-insured crop insurance policies. *See* 7 C.F.R. § 400.176(b)("No policy of insurance reinsured by the Corporation and no claim, settlement, or adjustment action with respect to any such policy shall provide a basis for a claim of punitive or compensatory damages or an award of attorney fees or other costs against the Company issuing such policy, unless a determination is obtained from the Corporation that the Company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by the Corporation and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled.") In *O'Neal v. CIGNA Property and Casualty Insurance Co*., 878 F.Supp. 848 (D.S.C. 1995), United States District Judge Cameron Currie held that the Federal Crop Insurance Act did not preempt state common law claims against a private insurance company for negligence, breach of contract, bad faith refusal to pay, and unfair trade practices. The court held that the Act only preempts actions against the government and not actions against private insurers based upon the actions of their agents.  The South Carolina Court of Appeals has also concluded that the FCIA does not preempt state law claims against private insurance companies who issue reinsured policies.  *See Lyerly v. American National Fire Ins. Co*., 343 S.C. 401, 540 S.E.2d 469 (Ct. App. 2000). *See also*, *Williams Farms of Homestead, Inc. v. Rain and Hail Ins.*, 121 F.3d 630, 635 (11th Cir. 1997), relying on the legislative history of the FCIA and finding that "Congress intended to leave insureds with their traditional contract remedies against their insurance companies."  Other courts which have addressed the issue of complete preemption of state law claims by the FCIA have also held no such preemption exists. *See Buchholz v. Rural Community Ins. Co.*, 402

F. Supp.2d 988 (W.D.Wis. 2005); *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 669 (9th Cir. 1993) (finding lack of complete preemption because no provision in Federal Crop Insurance Act amendment places suits against agents for errors and omissions within exclusive jurisdiction of federal courts); *Bullinger v. Trebas*, 245 F. Supp.2d 1060, 1066 (D.N.D. 2003) ("The majority of courts have held that the Federal Crop Insurance Act does not completely preempt state law causes of action.") (citing *Halfmann v. USAG Ins. Services, Inc.*, 118 F. Supp.2d 714 (N.D.Tex. 2000); *Bullard v. Southwest Crop Ins. Agency, Inc.*, 984 F. Supp. 531 (E.D.Tex. 1997); *Horn v. Rural Community Ins. Services*, 903 F. Supp. 1502 (M.D.Ala.1995); *Hyzer v. Cigna Prop. Casualty Ins. Co.*, 884 F. Supp. 1146 (E.D.Mich. 1995); *O'Neal*; and *Holman*).

This Court finds, for the same reasons, that the state law counterclaims pleaded by the defendants are not preempted.

### 1. Negligence

Defendants allege a First Counterclaim for common law negligence. They assert in Paragraph 27 of the Answer that Great American owes them a duty of due care and that the duty was breached by Great American or its agent's:

> failing to procure the insurance desired by the Defendants; failing to follow the directions of the Defe
> which was void and/or materially deficient; failing to provide the coverage Defendants
> undertook to obtain; failing to timely and properly process requested policy changes;
> failing to properly inform the Defendants of policy changes; failing to timely and
> properly process insurance applications, claims, and change forms; and failing to
> properly advise the Defendants.

Plaintiff asserts that Great American owed no duty to Defendant WMFI.  In addition, it asserts that Defendant Wayne Mills is deemed to know policy terms and that he cannot claim that Great American was negligent in failing to inform him of program requirements. It relies upon South Carolina case law holding that, as a general rule, an insurance agent has no duty to advise an insured at the point

of application, absent an express or implied undertaking to do so.  *See e.g., Houck v. State Farm Fire and Cas. Ins. Co.*, 366 S.C. 7, 620 S.E.2d 326 (2005).

"Ordinarily, the common law imposes no duty on a person to act.  An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance." *Rayfield v. South Carolina Department of Corrections*, 297 S.C. 95, 374 S.E.2d 910, 913 (1988). "Generally, an insurer and its agents owe no duty to advise an insured.  If the agent, nevertheless, undertakes to advise the insured, he must exercise due care in giving advice." *Trotter v. State Farm Mut. Auto Ins. Co.*, 297 S.C. 465, 377 S.E.2d 343 (Ct. App.1988), citing *Riddle-Duckworth, Inc. v. Sullivan*, 253 S.C. 411, 171 S.E.2d 486(1969). The South Carolina Court of Appeals has held that "independent insurance agents' licenses with several insurers are, with respect to policies issued on the agents' efforts, evidence of agency with and authority to speak for the insurer for which they are licensed." *Holmes v. McKay*, 334 S.C. 433, 513 S.E.2d 851, 856 (Ct. App. 1999). "[A]n insurance agent or broker must exercise good faith, reasonable skill, care and diligence.  If, because of his fault or neglect, the agent fails to procure insurance, or does not follow instructions, or the policy issued is void, or materially deficient, or does not provide the coverage he undertook to supply, the agent is liable to his principal."*Sullivan Co., Inc. v. New Swirl, Inc.*, 313 S.C.34, 437 S.E.2d 30, 31 (1993). "Absent an express undertaking to assume such a duty, a duty can be impliedly created. . . In determining whether an implied duty has been created, courts consider several factors, including whether: (1) the agent received consideration beyond a mere payment of the premium, (2) the insured made a clear request for advice, or (3) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on." *Houck*, 620 S.E.2d at 329.

In the case at bar, the court finds that there was at least an implied duty by the agent of Great

15

American to procure or accurately renew the crop insurance policy for the correct entity that owned the crops, here Wayne C. Mills Farm, Inc. The evidence taken in the light most favorable to the plaintiff shows a course of dealing between the parties from at least 1988 to 2005. There are also factual questions regarding the procurement of a void policy[3], especially where new applications for insurance were submitted in 2003, after the incorporation of the business.

Moreover, Defendants were not barred as a matter of law from recovering for negligence, based on failure to read the policy or to know the crop insurance rules. "[W]hile an insured cannot abandon all care, the rules which require one to inform himself of the terms of his contract and to take precautions for his own protection are less exacting when dealing with one's own insurance agent or broker in the procurement of an insurance contract." *Riddle-Duckworth,* 171 S.E.2d at 492. This also applies to renewal of a policy, where a layman would not have known about a coverage problem.[4] *See Orangeburg Sausage Co. v. Cincinnati Insurance Co.*, 316 S.C. 331, 450 S.E.2d 66, 71 (Ct. App. 1994). Therefore, the motion for summary judgment is denied as to the negligence claim of Wayne Mills Farm, Inc. and granted as to the negligence claim of Wayne Mills individually.

### 2. Breach of Fiduciary Duty

The question whether a fiduciary relationship exists is an equitable issue for determination by the Court. *Hendricks v. Clemson University*, 353 S.C. 449, 578 S.E.2d 711 (2003). "A confidential

---

[3] As noted hereinabove, ¶ 14 of the LAM provides that "insurance providers do not have to verify entities through the FSA; however, they are encouraged to do so since insurance providers must ensure that producer-certified information is accurate and that liability is established and indemnities are paid according to policy provisions." Here, the corporation was apparently listed with the FSA since 2002.

[4] Mills testified that, in his mind, "nothing changed" when the incorporation occurred and that he did not understand that a corporation was an entity that could own property or that the corporation was separate and apart from himself, where he was the sole shareholder. (Mills Dep., p.19).

16

or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one imposing the confidence." *Id.*, 578 S.E.2d at 715, citing *O'Shea v. Lesser*, 308 S.C. 10, 416 S.E.2d 629, 631 (1992). In South Carolina, sale of insurance is an arms length transaction, which normally does not give rise to a fiduciary relationship. "Because an applicant is still operating in the marketplace at the point of purchase, the insurer is in a decidedly different position than after the contract has been entered into. . . " *Pitts v. Jackson National Life Insurance Co.*, 352 S.C. 319, 574 S.E.2d 502 (2002). Therefore, it is clear that at the time of initial purchase of the crop insurance policy, no fiduciary relationship existed between Mills and the insurance company or its agent. However, a more difficult question is presented by the situation in the case at bar in which Mills did business with the company and its agent for over fifteen years and the agent was allegedly notified of the incorporation. However, the court is reluctant to recognize a fiduciary relationship between an insurance company and an insured where South Carolina courts have not done so. Therefore, the plaintiff's motion for summary judgment is granted on the counterclaim for breach of fiduciary duty.

### 3. *Bad Faith Refusal to Pay Insurance Benefits*

Bad faith refusal to pay benefits under a contract of insurance includes: (1) the existence of a mutually binding contract of insurance between the parties; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured. *Howard v. State Farm Mut. Auto. Ins. Co.*, 316 S.C. 445, 451, 450 S.E.2d 582, 586 (1994). In the case at bar, the court has already found that no valid contract of crop insurance was in effect between the plaintiff and either defendant. Therefore, no claim exists for bad faith refusal to pay benefits and the motion for summary judgment is granted as to this claim.

17

### 4. *Unfair Trade Practices Act*

As to the defendants' counterclaim under the South Carolina Unfair Trade Practices Act, the Act contains an exemption in Section 39-5-40(c) for "unfair trade practices covered and regulated under Title 38, Chapter 55, §§ 38-55-10 through 38-55-410." Section 38-57-30 provides that "[n]o person shall engage in this State in any trade practice, which is defined in this chapter as, or determined pursuant to this chapter to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." In addition, Section 39-5-40(a) contains an exemption for "transactions permitted under laws administered by any regulatory body. . ." Since the activities of Great American are regulated by the South Carolina Insurance Commission and also the Risk Management Agency (RMA) and Federal Crop Insurance Corporation (FCIC), then the Unfair Trade Practices Act does not apply in the case at bar. *See Trident Neuro-Imaging Laboratory v. Blue Cross and Blue Shield of South Carolina, Inc.*, 568 F.Supp.1474 (D.S.C. 1983), cited with approval by *Ward v. Dick Dyer and Associates, Inc.*, 304 S.C. 152, 403 S.E.2d 310 (1991).

### 5. *Breach of Contract*

The court has ruled in favor of Great American on the coverage issue. Therefore, the motion for summary judgment is granted as to the breach of contract claim.

### 6. *Unjust Enrichment/Conversion*

"Unjust enrichment is an equitable doctrine, akin to restitution, which permits the recovery of that amount the defendant has been unjustly enriched at the expense of the plaintiff." *Ellis v. Smith Grading and Paving, Inc.*, 294 S.C. 470, 366 S.E.2d 12 (Ct. App. 1988). "Conversion is defined as the unauthorized assumption in the exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the owner's rights." *Moseley v. Oswald*, 376 S.C. 251, 656 S.E.2d 380 (2008). With regard to the conversion and unjust enrichment claims, the plaintiff asserts

18

that it had the right to retain 20% of the premium payments under paragraph 27 of the policy. The record is unclear as to the exact amounts. The Court notes that the defendants kept the entire $2781, which the affidavit of its manager appears to indicate was the entire 2004 policy premium[5] and applied it to the improperly paid indemnity payments of $14,448 and $16,199; yet, they seek a judgment for the total amount of $30,647. The plaintiff seems to claim that it retained 20% of the 2005 premium and kept the entire 2004 premium of $2781. In other words, regarding the 2004 premium, it kept 100% of it on a policy that it has argued was void. Even assuming there is a policy provision that permits the 20% retention, the plaintiff points to no policy provision allowing for more than a 20% retention, and simply has on its own, prior to obtaining any judgment kept the entire $2781 and sought a judgment, not for $30,647 less the $2781, but for the total amount of $30,647. Plaintiff at most was entitled to keep 20% of the 2004 and 20% of the 2005 premiums and then only if it were shown that there was intentional concealment or misrepresentation under paragraph 27. The record is unclear as to what this amount is and leaves issues such as those discussed above which should be determined by the finder of fact, or at least developed more completely at trial. Therefore, the motion for summary judgment is denied as to the conversion and unjust enrichment claims as to Wayne C. Mills Farm, Inc.

***Fraud***

Defendants have not argued the fraud claim in their brief or at oral argument. Therefore, this claim is deemed abandoned.

---

[5] The record before the Court contains a copy of a check on the Wayne Mills Farm, Inc. bank account to Great American for crop insurance dated September 14, 2004 in the amount of $3805.00 and a check from Wayne Mills Farm, Inc. for crop insurance dated October 20, 2005 in the amount of $3876.00. *See* attachments to Defendants' Memorandum in Opposition to Motion for Summary Judgment. (Docket Entry # 74-5).

**Conclusion**

The Court **GRANTS** the plaintiff's motion for summary judgment as to Count 1 and declares that defendant Wayne C. Mills is the only named insured under the 2004 and 2005 policies; that defendant Wayne C. Mills Farm, Inc. is not an insured under the 2004 or 2005 policies; Great American has a right to reimbursement from Wayne C. Mills individually for the indemnities which it paid to him under the 2004 MPCI policies; and that Great American has no liability to either defendant under the 2005 policies.

As to Count 2, the Court **GRANTS** the plaintiff's motion for summary judgment and awards Plaintiff a money judgment for the $14,448 indemnity under Policy No. 2004-SC-030-855913 and the $16,199 indemnity under Policy No. 2004-SC-030-855918, plus interest at the rate of 1.25 percent simple interest per calendar month on the combined balance of $30,647.00.

The Plaintiff's motion for summary judgment is **DENIED** as to Count 3, which requested a declaratory judgment that defendant Mills must pay Great American 20 percent of the premium paid under the 2004 and 2005 policies. The Plaintiff's motion for summary judgment is **DENIED** as to Count 4 for unjust enrichment.

The Plaintiff's motion for summary judgment is **DENIED** as to the FIRST counterclaim for negligence by Wayne C. Mills Farm, Inc and **GRANTED** as to the FIRST counterclaim for negligence by Wayne C. Mills, individually. The motion for summary judgment is **DENIED** as to the FOURTH counterclaim for unjust enrichment and as to the SEVENTH counterclaim for conversion by Wayne C. Mills Farm, Inc. and granted as to these counterclaims by Wayne C. Mills, individually. The plaintiff's motion for summary judgment is **GRANTED** as to the SECOND, THIRD, FIFTH, SIXTH, and EIGHTH counterclaims for bad faith refusal to pay insurance benefits, breach of fiduciary duty, fraud, breach of contract, and unfair trade practices.

20

The motion for summary judgment is accordingly **GRANTED IN PART AND DENIED IN PART**.

**AND IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

May 29, 2008
Florence, South Carolina

21